## Case No. 3,702.

### DEAN et al. v. ANGUS.

[Bee, 369.][1]

Admiralty Court, Pennsylvania. 1785.

ADMIRALTY JURISDICTION — LIBEL BY OWNERS AGAINST CAPTAIN—LIABILITY FOR HIS TORTS.

1. Admiralty has jurisdiction of a libel by owners against their captain, for satisfaction

[1] [Reported by Hon. Thomas Bee, District Judge.]

of the damages which they have sustained in consequence of a wrongful capture made by him.

[Cited in American Ins. Co. v. Johnson, Case No. 303; Bains v. The James & Catherine, Id. 756.]

2. Owners are answerable for torts done by the captains they employ under a general principle of the maritime law, and not by virtue of any special contract.

[Cited in Ralston v. The State Rights, Case No. 11,540; The Martha Anne, Id. 9,146; New Jersey Steam Nav. Co. v. Merchant's Bank, 6 How. (47 U. S.) 430; McGuire v. The Golden Gate, Case No. 8,815; The Yankee v. Gallagher, Id. 18,124; The Florence, Id. 4,880.]

Judgment on a plea to the jurisdiction of the admiralty.

In a former suit in this court, Silas Talbot libelled and recovered against Dean, Purviance and Harbeson, as owners of the brigantine Hibernia, and also against certain other persons, respondents in that cause, for a wrongful capture on the high seas. From the decree in that cause, an appeal was entered, and the cause removed to the high court of errors and appeals for the commonwealth; where a judgment was finally obtained against the said respondents to a considerable amount. And now, Dean, Purviance and Harbeson libel against John Angus, their captain, for satisfaction of the damages they have sustained, in consequence of the wrongful capture he had made. To this libel, Angus hath filed for answer, a denial of the wrong done, and a plea to the jurisdiction of this court in the present cause. "For this, viz. that the contract between the said libellants and him, the said Angus, and also the damage alleged to be sustained by the said libellants, if any there be, arose upon the land, to wit, in Philadelphia, in the county of Philadelphia."

Three acknowledged principles of law naturally present themselves, for the solution of the present question, viz. 1st. Where the original cause of action is exclusively of admiralty or exclusively of common law jurisdiction, all incidental matters, and all matters necessarily flowing from, or dependent upon, that first cause of action, shall follow the original jurisdiction, whatever the complexion of those matters, separately considered, may be. 2dly. Where the original cause of action is partly of common law and partly of admiralty jurisdiction, the common law shall be preferred. 3dly. Where the jurisdictions are concurrent, the suit may be determined in either. To one or other of these principles must the present case apply, to ascertain the jurisdiction by which it is to be tried; and the propriety of the application depends upon this sole question, what is the *original cause of action in this suit?*

It is alleged in support of the plea, that this is a new action between the owners of a vessel and their captains, and hath no necessary connexion with the suit brought by Silas Tal-

bot. That..it is enough if the respondents shew that the decree passed against the libellants, not as principals in the wrongful capture, but solely on account of the maritime law, which makes owners answerable for the misconduct of the captains they employ; and, therefore, their connexion with Angus, as captain of the brig Hibernia, must be considered as the true cause of the damages they say they have suffered, and the source from which the present suit originates. And so infer, that as this connexion is grounded on a contract, express or implied, made upon the land, the original cause of action must, from its nature and locality, be exclusively of common law jurisdiction.

The two criterions of exclusive jurisdiction are, the subject matter and the locality of the transaction. It is not doubted but that the question of prize or no prize, when it is the foundation of a suit, is exclusively of admiralty cognizance, from the subject matter. The authorities to this point are too numerous and conclusive to admit of contradiction. But these authorities go farther, and say, that the mere taking as prize, and all matters dependent thereupon, are also peculiarly of admiralty jurisdiction. Lord Chief Justice Lee's opinion, in the case of Rous v. Hassard, as cited by Lord Mansfield, and again cited by Justice Willes in the case of Le Caux v. Eden, 2 Doug. 594, is full to this purpose. "The great question was, whether an action of trespass would lie for taking a ship as prize? Lord Chief Justice Lee, having called in two civilians to his assistance, delivered the opinion of the court, that though. for taking a ship on the seas, trespass would lie at common law, yet, when it was taken as prize, though taken wrongfully, though it were acquitted, and though there were no colour for the taking, the judge of the admiralty was judge of the damages and costs, as well as of the principal matter; and he laid it down as law, that if such an action was brought in England, and the defendant pleaded not guilty, the plaintiff could not recover." By this quotation, it is clear, that, in order to fix the admiralty jurisdiction, it is not necessary that the question before the court should precisely be, is this property lawful prize to the captor, or is it not? but a suit for costs and damages may be had in the admiralty for a taking as prize, though wrongfully done, and even without any colour for such taking; and, as it should seem from the case, even though the property so taken, should not be in the possession of the court. So, also, in the case of Lindo v. Rodney, 2 Doug. 612, Lord Mansfield, in giving the opinion of the court, says—"A thing being done upon the high seas, does not exclude the jurisdiction of the common law. For seizing, stopping or taking a ship upon the high seas not as prize, an action will lie; but for taking as prize, no action will lie. The nature of the question excludes, not the locality." And a little farther on—"The end of a prize court is to suspend the property till condemnation, and to punish every sort of misbehaviour in the captors."

How it came to pass, that the Case of Silas Talbot was, by the court of errors and appeals, and still is, by concession of counsel in the present cause, considered to be not of admiralty jurisdiction, on account of the subject matter, I am at a loss to conceive; especially when I look at the two only points of defence taken in that cause, viz. 1st. That from the papers found on board the captured vessel, and from other concomitant circumstances, there was a reasonable colour for taking as original prize; and, 2dly, that if the vessel captured was indeed prize to Silas Talbot, the three brigs were in sight at the time of the capture, and, by the maritime law, acquired thereby an interest in the property—I say, these pleas, together with the current of the testimony then exhibited, and the time of the transaction, being time of war, all united in fixing that cause within the admiralty jurisdiction, from the subject matter and nature of the case. It is in obedience to strong conviction, that I thus venture to differ in opinion from the judgment of the honourable court of errors and appeals—a judgment which, I am inclined to believe, would not have taken place, but from the peculiar situation of Talbot's Cause. The court of appeals for the United States, in prize causes, had rejected the appeal, because the question was not strictly prize or no prize, but an action for damages between citizen and citizen. That court, as I have understood, looked at that cause in no other point of view, and therefore refused to take cognizance of it, and soon after adjourned. The appeal was then carried to the high court of errors and appeals for this commonwealth. The proctors had previously agreed not to contest the point of jurisdiction, and so the cause came before the judges on the merits only; and the court proceeded to sentence, without suspecting their jurisdiction. After sentence, however, some of the judges began to entertain scruples respecting the jurisdiction of the court, and, upon inquiry, found that the jurisdiction had only been submitted to by consent. The court well knew, that consent could not give jurisdiction, and therefore retracted or suspended the sentence, until an argument should be held on that point; and the question of jurisdiction was again agitated. In the mean time, that is, between the rejection of the cause by the court of appeals for the United States, and its introduction into the court for the commonwealth, the case of Le Caux v. Eden, as reported by Douglas, with Lord Mansfield's dissertation on admiralty jurisdiction subjoined, made their first appearance amongst us, and furnished new ideas respecting the court of admiralty. Then. for the first time, did the distinction occur, between the prize court and the instance court of admiralty. Possessed of this idea, the judges of appeal for the state, looked at the

proceedings which the court of admiralty had adopted in the case before them, and found they had been in personam, by attachment, to answer for damages arising from a tort committed at sea. This, it was observed, was never the practice in the prize court, which always proceeded in rem, by proclamation and monition, whether the property be, in fact, in the possession of the court or not. And so it was in the case of The King v. Broom, Carth. 398, by proclamation at the royal exchange, although the prize taken had been previously sold at Barbadoes. And, for this error of form in the admiralty, Talbot's Case was considered as belonging to the instance court. The judges of appeal considered themselves as an instance court of appeals, and so proceeded to the definitive decree. Had the court of admiralty, when Talbot's Cause first made its appearance there, been possessed of the light which hath been since thrown upon this subject, it is more than probable that the process would have been conducted otherwise than it was. It should be observed, however, that an exclusive jurisdiction cannot be subverted by an erroneous process. How far the consideration, that if the court of appeals for the commonwealth should reject Talbot's Cause (as the court for the United States had done) the appellants would have had no other resource, and so been deprived of the benefit of an appeal, might have operated to induce the judges to take that cause within their cognizance as an instance court, I will not presume to say. But the peculiar circumstances of the case ought to be remembered; and I have mentioned them on this occasion, from a sense of the duty I owe to the jurisdiction entrusted to my care.

I come now to consider the origin of the cause before the court, and whether it is, or is not, necessarily dependent on, and consequential to, the Case of Silas Talbot. It has been said, that this suit is derived from three circumstances; viz. the contract by which Angus was made captain of the Hibernia—' the wrongful taking at sea—and the damages the libellants have been obliged to pay, in consequence of this contract and wrongful taking. And it has been urged, that as two of these circumstances, viz. the contract and the payment of damages, happened on the land, the common law, by the second general rule, hath the exclusive jurisdiction. It appears to me, however, that owners are answerable for torts done by the captains they employ, under a general principle of the maritime law, and not by virtue of any special contract. No such responsibility can be deduced from any articles or sailing orders given to captains of vessels. The contract may be the ground of an action of damages for a breach of orders respecting the particular interests of the owners; but, in cases of tort, the owners are answerable by a general law. The libellants have been obliged to pay the damages in Talbot's Case, not because they employed Angus, but because they were owners of the brigs. Neither can I consider the payment of moneys, according to the decree in favour of Silas Talbot, as the origin of the present suit. We should not stop short in the train of causes. In such a train, every circumstance is the effect of the preceding and the cause of the subsequent link. No decree would have past, no damages have been paid, nor would the present suit have been instituted, but for the original wrong done at sea. To this wrong, therefore, we must have recourse, for the source of the present action.

Some pains have been taken to apply the case of ransom-bills, charter-parties, and policies of insurance, all suable at common law, to the present suit. A ransom-bill supposes a divestiture of property by the rights of war, and the bill is a promissory note for a certain sum, in consideration of the victor's relinquishing his right of conquest, and restoring the property. In a suit, therefore, on a ransom-bill, the question of prize or no prize can only come in incidentally, to shew whether there was a value received or not. For, if the taking was wrongful, the property never divested, and, of course, the promissory bill was given without consideration. Charter-parties and policies of insurance, are written contracts, executed on land, respecting certain specific contingencies. It is altogether immaterial where these contingencies shall happen. The suit is founded in the binding force of the contract, and the contingencies are only incidental circumstances, shewing that the force of the contract is to take place and operate. But these are not parallel to the case before the court, wherein the libellants complain of damages they have sustained, in consequence of a tort committed at sea, by the captain they had employed. When the Case of Silas Talbot came first before this court, the libel was filed in the name of Silas Talbot qui tam against the brigs Achilles, Patty and Hibernia, and against certain persons, in the said libel named, as owners and captains of the said brigs. All these persons (except two, if I rightly remember) appeared either in person or by proxy, and entered into stipulations, according to the practice of the court. In this form the suit proceeded through the admiralty and through the court of appeals. The question was general in both courts, viz. Whether there had been a wrong done? and if so, whether the parties who had appeared as respondents to the libel, were answerable for the damage, and to what amount? And, finally, the decree was also general, that the appellants should pay to the appellee certain moneys, in recompense of the injury sustained. But how far any particular captain, or the owners of any particular vessel, might have justified themselves by a separate defence, was never the subject of inquiry—no such specific justification having been proffered in either court.

And whether it is or is not now too late to make discrimination, may be the subject of future · discussion: but I mention this to shew, that the present libel manifestly rises out of Talbot's Case, and that its pursuit will unavoidably force us up to the wrongful taking as prize, for the origin of the present suit. Since, then, I cannot but consider the Case of Silas Talbot as properly belonging to the prize court of admiralty, and that the present suit originates from, and is a supplementary part of, that transaction; I cannot (according to the first principle stated) but overrule the present plea to the jurisdiction of this court.

I conclude with this observation, that in all pleas of this kind, where the law is doubtful, the leaning of the court will be in favour of its own jurisdiction. Not from a desire of extending the admiralty cognizance, but for this important· consideration, that if the decision in favour of the jurisdiction should be erroneous, the doors of the common law are open for redress, and a prohibition may be obtained; but there is no remedy for the erroneous exclusion of parties who apply for the process of the admiralty, the benefit of the laws by which it is governed, and the summary justice it affords.

[NOTE. The cause having been afterwards heard on the merits. the libel was dismissed. Case No. 3,703. Libellants thereupon appealed to the high court of errors and appeals of Pennsylvania. which entered a decree in their favor. Purviance v. Angus, 1 Dall. (1 U. S.) 180.]